**Appellee's Motion for Rehearing Granted; Affirmed; Opinion of February 3, 2011, Withdrawn, and Majority and Dissenting Opinions on Rehearing filed February 28, 2012.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-09-00617-CV

---

### DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE FOR NEW CENTURY HOME LOAN TRUST 2006-2, Appellant

### V.

### STOCKDICK LAND COMPANY, Appellee

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2008-60974**

---

## DISSENTING OPINION ON REHEARING

A residential real property lien was extinguished by a sale of the property to satisfy a property-tax lien. After the tax sale, the former owners sought to redeem the property under section 34.21 of the Texas Tax Code, which governs redemption of real property sold at a tax sale. The holder of the extinguished lien brought a declaratory-judgment suit against the tax-sale purchaser, arguing that the former owners had redeemed the property and, in the alternative, that the purchaser was precluded under the doctrine of quasi-estoppel from denying that the former owners had redeemed the

property. The prerequisites of Texas Tax Code section 34.21 were not satisfied, but the trial court erred in granting the purchaser's summary-judgment motion because of fact issues regarding quasi-estoppel. In concluding that the trial court properly granted summary judgment, the majority contradicts binding precedent regarding (1) what a nonmovant must do to raise an affirmative defense in response to a traditional summary-judgment motion and (2) the meaning of certain language in the quitclaim deed executed by the tax-sale purchaser. Rather than affirm, this court should reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

The residential real property in question is located on Yoakum Boulevard in Houston, Texas (the "Property"). Gordon Wittenberg and his wife Susan Wittenberg constructed a residence on the Property in 2003, when title to the Property was held by Tribus, Inc. Tribus did not pay all of the property tax due on the Property for 2004, and in 2005 the taxing authorities filed a collection suit against Tribus and Frost National Bank, the holder of the mortgage, seeking to collect the taxes and foreclose the tax lien. On behalf of Tribus, Gordon Wittenberg acknowledged that the taxes were past due and stated that Tribus planned to pay the delinquent taxes under a payment plan.

On May 25, 2006, Tribus conveyed to Susan Wittenberg title to the Property. At the same time, the Wittenbergs[1] refinanced the existing mortgage indebtedness on the Property, which had been held by Frost National Bank. The new indebtedness took the form of a promissory note in the principal amount of $650,000 payable to New Century Mortgage Corporation, secured by a deed-of-trust lien filed for record on June 9, 2006 (the "Bank's Lien"). New Century later assigned this indebtedness and lien to plaintiff/appellant Deutsche Bank National Trust Company, as Indenture Trustee for New Century Home Loan Trust 2006-2 (the "Bank"). Shortly after the closing of the refinancing transaction, most of the property taxes on the Property for 2004 and 2005

---

[1] Though Tribus conveyed title to the Property to Susan Wittenberg only, for various reasons, perhaps including community-property issues, both Wittenbergs are included as parties to various documents. Therefore, the Wittenbergs are referred to in this opinion as if both were owners of the Property, even though Gordon Wittenberg was not a record owner.

were paid. Despite these payments, approximately $4,600 in taxes due to the Houston Independent School District for 2005 were not paid. Based on these unpaid taxes, the trial court in the tax suit (the "Tax Court") rendered a final judgment in February 2007, for these taxes plus penalties and interest, for a total amount of $6,847.63. The Tax Court also ordered foreclosure of the tax lien on the Property and sale of the Property, which the Tax Court determined had a market value of $659,100 on the date of trial in January 2007.[2] Other than the taxing authorities, the only parties to this judgment were Tribus and Frost National Bank.

The tax sale occurred on June 5, 2007, and appellee/defendant Stockdick Land Company ("Stockdick") purchased the Property at this sale for $370,000 in cash. Out of these proceeds from the tax sale, the 2005 taxes that were the basis of the judgment were paid, and the 2006 property taxes on the Property also were paid. After these payments, $335,767.52 of the proceeds from the tax sale remained (the "Remaining Proceeds"). The Tax Court ordered these proceeds disbursed to Tribus.

In December 2007, Stockdick signed a deed (the "Deed") stating as follows:

[Stockdick] . . . for and in consideration of $462,500 consisting of cash in the amount of $370,000 and one promissory note in the principal sum of $92,500 payable to the order of [Stockdick], bearing interest at the rate therein provided, said note . . . being secured **by vendor's lien and superior title** retained herein in favor of [Stockdick], and being also secured by Deed of Trust of even date from Grantee to Wade A. Riner, Trustee, the receipt and sufficiency of which is hereby acknowledged and confessed, does hereby sell, transfer, and deliver unto Gordon Wittenberg and wife, Susan Wittenberg whose address is [address of the Property] (hereinafter referred to as "Grantee"), all of Grantor's right, title, and interest in [the Property]. This deed is made without warranty, express or implied, and **is executed pursuant to redemption of the Property by Grantee from that certain tax sale conducted on or about June 5, 2007** under Cause No. 2005-74535 styled, *Harris County, et al. v. Tribus, Inc., et al.*, 80th Judicial District Court, Harris County, Texas.

(emphasis added). The Deed and the deed of trust mentioned therein were filed for

---

[2] A trial court rendering judgment in a suit for foreclosure of a tax lien on property is required to make such a finding in its judgment. *See* TEX. TAX CODE ANN. § 33.50 (West 2012).

record on December 10, 2007. The promissory note mentioned in the Deed was executed by the Wittenbergs in the original principal amount of $92,500, with an interest rate of ten percent per year (the "Note"). The Note and deed of trust were signed two days before the Deed was signed. On July 31, 2008, all principal and interest ($98,582.19) was due under the Note. The Wittenbergs did not pay the amounts due under the Note.

David Petroni of Carrington Mortgage Services, LLC sent a letter to Stockdick on September 23, 2008, stating his understanding that Stockdick had purchased the Property at a tax sale in June 2007 and had obtained a deed for the Property. Petroni stated that Carrington had an active loan on the Property and desired to regain possession of the Property. Petroni requested that Stockdick provide a redemption quote. Stockdick informed Petroni that the payoff amount was $113,777.54, based upon the past-due amount owing under the Note. Neither Carrington nor the Bank made any payment to Stockdick.

Less than a month later, on October 15, 2008, the Bank filed this declaratory-judgment suit in the trial court below. Stockdick proceeded with a non-judicial foreclosure sale of the Property on November 4, 2008. Stockdick purchased the Property at this sale for $50,000, and the trustee's deed reflecting this sale was filed for record on November 11, 2008.

In its declaratory-judgment suit, the Bank alleged that the Wittenbergs exercised their statutory right to redeem the Property and that this redemption resulted in the Deed. According to the Bank, as a result of this redemption, the Bank's Lien was reinstated as a valid and subsisting mortgage against the Property, and this lien was senior and superior to Stockdick's deed-of-trust lien ("Stockdick's Lien"). The Bank asserted that Stockdick is estopped from denying that the Deed effected a redemption of the Property. The Bank sought declaratory relief regarding the relative lien priorities of the Bank's Lien and Stockdick's Lien. Among other things, the Bank sought declarations that (1) the Wittenbergs redeemed the Property after the tax sale, thus reinstating the Bank's Lien as a valid lien on the Property, (2) the Bank's Lien is senior and superior to Stockdick's Lien, and (3) any foreclosure of Stockdick's Lien has no effect on the validity, seniority,

4

or priority of the Bank's Lien. The Bank also requested reasonable and necessary attorney's fees under section 37.009 of the Texas Civil Practice and Remedies Code.

The Bank filed a traditional motion for summary judgment on all of its claims for declaratory relief. Stockdick filed a traditional motion for summary judgment, asserting the following grounds:

> (1) The Wittenbergs did not redeem the Property because they did not comply or substantially comply with the requirement that they pay Stockdick $92,500 in cash, which was the twenty-five percent premium required by section 34.21 of the Tax Code.[3]
>
> (2) Stockdick maintained its superior title to the Property by reserving a vendor's lien to secure payment of the Note.
>
> (3) The Bank waived its contention that the Wittenbergs redeemed the Property.
>
> (4) The Bank may not assert its claims under the Declaratory Judgments Act; rather, this action is really a trespass-to-try-title action.

The trial court granted Stockdick's motion, denied the Bank's motion, and rendered judgment that the Bank take nothing.

While the trial court still had plenary power over this case, the court granted the Bank leave to supplement its petition to add new claims based in part upon the following allegations:

- The constable sold the Property to Stockdick at the tax sale for $370,000. After satisfying the judgment and costs relating to the sale, the constable returned the excess proceeds to the district clerk. New Century received no notice of the existence of these proceeds.

- Attorney Stephen Riner filed a motion on behalf of Tribus, asserting that the Remaining Proceeds belonged to Tribus as the former owner of the Property. In this motion Tribus asked the Tax Court to order the district clerk to disburse the Remaining Proceeds to Tribus. This motion was served upon Frost National Bank but not upon New Century. Riner later served as Stockdick's attorney of record in the case under review.

---

[3] Unless otherwise expressly stated, all statutory references in this opinion are to the Texas Tax Code.

5

- On September 17, 2007, the Tax Court granted Tribus's motion and ordered the district clerk to disburse the Remaining Proceeds to Riner as attorney for Tribus.

- The Remaining Proceeds were transferred to Stockdick and used by the Wittenbergs as part of the consideration for the Deed.

- At the time of the proceedings in the Tax Court regarding disbursement of the Remaining Proceeds, New Century was a lienholder. Therefore, under the Texas Tax Code, New Century had a higher priority of right than Tribus to the Remaining Proceeds.

- New Century received no notice of the proceedings that led to the disbursement of the Remaining Proceeds.[4]

The Bank sought recovery of the Remaining Proceeds from Stockdick. The Bank alleged Stockdick wrongfully had obtained the Remaining Proceeds from the Tax Court's registry. The Bank also sought (1) a declaration that it held a superior right to the Remaining Proceeds, (2) a money judgment against Stockdick based upon claims for money had and received, unjust enrichment, and conversion, and (3) a constructive trust. The Bank alleged that these claims had become ripe only after the trial court granted Stockdick's summary-judgment motion and denied the Bank's motion. The Bank expressly stated that, by asserting the claims in its supplemental petition, it was not waiving any of its prior claims in the case under review. Stockdick asserted that the Bank's claims regarding the Remaining Proceeds constituted an improper collateral attack on the Tax Court's final September 17, 2007 order under section 34.04, from which no appeal was taken.[5]

---

[4] The Bank asserts that, though New Century was aware of the tax suit against Tribus and Frost National Bank, New Century was operating under the premise that the unpaid taxes had been paid in full so that the tax suit would be dismissed. New Century was not a party in the tax suit, though New Century could have intervened in that suit.

[5] Under section 34.04, entitled "Claims for Excess Proceeds," within two years of the tax sale, a person may file a petition in the court that ordered the tax sale, setting forth a claim to the excess proceeds. *See* TEX. TAX CODE ANN. § 34.04(a) (West 2012). According to this statute, the petitioner is required to serve the petition only on the parties in the underlying tax suit. *See id*. § 34.04(b). The trial court shall order that the proceeds be paid according to the priorities set forth in section 34.04(c) to each party that establishes its claim to the proceeds. *See id*. § 34.04(c). This order is appealable. *See id*. § 34.04(e).

6

Acting upon Stockdick's motion, the trial court later severed the claims in the Bank's supplemental petition into a separate case and transferred that case to the Tax Court, thus creating a final and appealable judgment in the case under review. On appeal, the Bank asserts various arguments under issues in which it assigns error regarding the trial court's grant of Stockdick's summary-judgment motion and denial of the Bank's summary-judgment motion.

ANALYSIS

**The Bank is not estopped from bringing this appeal.**

Stockdick asserts that the Bank "should be estopped from bringing this appeal" because the Bank is pursuing a claim to the Remaining Proceeds. Stockdick cites no authority for this proposition. The Bank pleaded its claims regarding the Remaining Proceeds as alternative claims that it asserted in the event that the Bank's other claims failed. Parties are allowed to plead inconsistent claims in the alternative. *See* TEX. R. CIV. P. 48 (stating that "[a] party may set forth two or more statements of a claim or defense alternatively or hypothetically . . . [a] party may also state as many separate claims or defenses as he has regardless of consistency"); *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851–52 (Tex. 1980) (stating that parties may plead inconsistent claims in the alternative); *Horizon Offshore Contractors, Inc. v. Aon Risk Servs. of Tex., Inc.*, 283 S.W.3d 53, 59–60 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (noting that a party may assert inconsistent claims in a single suit but that a party who successfully pursues a claim in one suit under certain circumstances may be barred from asserting an inconsistent claim in a second suit). The Bank made it clear that its claims regarding the Remaining Proceeds were asserted subject to and without waiving its declaratory-judgment claims. Under these circumstances, the Bank is not estopped from bringing this appeal based upon its claims regarding the Remaining Proceeds.

**Under Tax Code section 34.21(a), an owner may not provide a promissory note to the purchaser to satisfy the requirement of "paying" the redemption premium.**

The Bank asserts that the Wittenbergs redeemed the Property under section

7

34.21(a) in December 2007.  *See* TEX. TAX CODE ANN. § 34.21(a) (West 2012).  Stockdick asserts that there was no redemption because the Wittenbergs provided a promissory note for the redemption premium, which Stockdick asserts does not constitute "paying" the redemption premium, as required by section 34.21(a).  *See id.*  To resolve this question, the court must interpret the word "paying" as used in section 34.21(a).[6]

In construing a statute, this court's objective is to determine and give effect to the Legislature's intent.  *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000).  If possible, the court must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state.  *Id.*  If the meaning of the statutory language is unambiguous, this court should adopt the interpretation supported by the plain meaning of the provision's words.  *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997).  This court must yield to the plain sense of the words the Legislature chose, rather than engage in forced or strained construction.  *See id.*

In pertinent part, Tax Code section 34.21, entitled "Right of Redemption," provides as follows:

> (a) The owner of real property sold at a tax sale to a purchaser other than a taxing unit that was used as the residence homestead of the owner . . . may redeem the property on or before the second anniversary of the date on which the purchaser's deed is filed for record by *paying* the purchaser the amount the purchaser bid for the property . . . plus a redemption premium of 25 percent of the aggregate total if the property is redeemed during the first year of the redemption period. . . .
>
> . . .
>
> (f) The owner of real property sold at a tax sale may redeem the real property by *paying* the required amount as prescribed by this section to the assessor-collector for the county in which the property was sold, if the owner of the real property makes an affidavit stating:
>
>> (1) that the period in which the owner's right of redemption must be exercised has not expired; and

---

[6] Section 34.21(a) gives a right of redemption also provided in article 8, section 13 of the Texas Constitution.  *See* TEX. CONST. art. 8, § 13.  The relevant language is substantially similar and, on appeal, the Bank has not referred to the constitutional right of redemption.

(2) . . . that the owner and the purchaser cannot agree on the amount of *redemption money* due, or that the purchaser refuses to give the owner a quitclaim deed to the property.

(f-1) An assessor-collector who receives an affidavit and *payment* under Subsection (f) shall accept that the assertions set out in the affidavit are true and correct. The assessor-collector receiving the *payment* shall give the owner a signed receipt witnessed by two persons. The receipt, when recorded, is notice to all persons that the property described has been redeemed. The assessor-collector shall on demand *pay the money received* by the assessor-collector to the purchaser.[7]

TEX. TAX CODE ANN. § 34.21 (West 2012) (emphasis added). The parties have not cited and research has not revealed any cases addressing (1) the meaning that should be given to the terms "paying" or "pay" in this statute or (2) whether providing a promissory note to the purchaser constitutes "paying" within the meaning of this statute. The statute does not contain definitions of either "paying" or "pay," so these terms must be construed based on their ordinary meaning. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 n.19 (Tex. 2006). But, the infinitive "to pay" has various meanings in ordinary usage, including both to give money to another and to give to another what is due. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1659 (1993 ed.) (stating various definitions for "to pay," including "to . . . discharge an obligation to: make due return to" and "to make any agreed disposal or transfer of (money)"). The proper construction of the word "paying" in subsection (a) of section 34.21 is informed by subsections (f) and (f-1) of this statute. Under the latter subsections, if the owner and the purchaser cannot agree on the redemption amount or if the purchaser refuses to give the owner a quitclaim deed to the property, the owner may redeem the property by "paying" the redemption amount to the assessor-collector for the county in which the property was sold, if the owner submits an

---

[7] The redemption period for the Wittenbergs expired on March 20, 2010, the second anniversary of the date on which the purchaser's deed was filed for record. The versions of subsections (f) and (f-1) quoted above apply to redemptions that take place on or after September 1, 2009. *See* Act of May 21, 2009, 81st Leg., R.S., ch. 374, §§ 2, 3, 2009 Tex. Gen. Laws 913, 914. For redemptions occurring between June 5, 2007 and August 31, 2009, there was no subsection (f-1) of section 34.21, and the wording of subsection (f) was different; but the differences in these two versions of the statute are not material to the statutory-construction issue in this case. Therefore, the current version is cited.

affidavit that complies with section 34.21(f). *See* TEX. TAX CODE ANN. § 34.21(f), (f-1). Significantly, in subsection (f), the Legislature refers to the redemption amount to be paid under subsection (a) as "the amount of redemption *money* due." *Id*. § 34.21(f) (emphasis added). In addition, after the owner has paid the assessor-collector, the assessor-collector shall give the owner a signed receipt and "shall on demand *pay the money received* by the assessor-collector to the purchaser." *Id*. § 34.21(f-1) (emphasis added). If the owner could "pay" the assessor-collector by providing a promissory note for the redemption amount, then the assessor-collector would not have received any money, yet subsection (f-1) states that "paying" the assessor-collector results in receipt of money by the assessor-collector. Under the unambiguous language of subsections (f) and (f-1), to "pay" the assessor-collector, the owner must give money to the assessor-collector.[8] It is not reasonable to construe the word "paying" to have a different meaning in subsection (a) of section 34.21 than it has in subsections (f) and (f-1).

It is reasonable to expect that an owner whose real property is sold at a tax sale is experiencing financial difficulties. Moreover, though some purchasers at tax sales may be favorably disposed to a redemption under section 34.21 by the owner, other purchasers may not want the property to be redeemed and may insist that all the requirements of the statute be satisfied. In the latter situation, it would not be reasonable to allow an owner to redeem the property based on a mere promise to pay, especially when the purchaser bought the property by paying cash at a tax sale.

As the Bank notes, the Supreme Court of Texas has stated that "statutes which give the right to redeem are to be regarded favorably and construed with liberality." *Buckholts v. Alsup*, 56 S.W.2d 301, 305 (Tex. App.—Texarkana 1932, writ ref'd). Under this rule, section 34.21(a) must be construed liberally. *See id*. But this doctrine of liberal construction cannot be used as a license to contradict the plain meaning of the statute.

---

[8] In some cases courts state that a proper tender of the required amount of money is sufficient to redeem property under section 34.21. *See Jensen v. Covington*, 234 S.W.3d 198, 206–07 (Tex. App.—Waco 2007, pet. denied). Though a proper tender likely would be considered paying the money, this court does not need to address this subject because there is no issue as to whether the Wittenbergs made a proper tender.

10

*See State v. PR Invs.*, 180 S.W.3d 654, 665 (Tex. App.—Houston [14th Dist.] 2005) (en banc), *aff'd*, 251 S.W.3d 472 (Tex. 2008). No amount of liberal construction can transform the meaning of "money" to "promissory note" or "pay" to "promise to pay." Such an interpretation is neither fair nor reasonable, nor in accordance with the purposes of the statute.

The Bank also asserts that the Wittenbergs were not obligated to strictly comply with the requirements of section 34.21 and that substantial compliance was sufficient. Though other Texas intermediate courts of appeals have held to this effect, the parties have not cited and research has not revealed any case from the Supreme Court of Texas or this court addressing this issue. It is presumed for the sake of argument that strict compliance was not required and that the Wittenbergs were required only to substantially comply with section 34.21. But, even operating under this presumption, providing a promissory note as "payment" of the redemption premium does not constitute substantial compliance with section 34.21. *See Burd v. Armistead*, 982 S.W.2d 31, 35 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (holding that tender of amount that was more than sixty percent of the redemption amount under section 34.21 did not constitute substantial compliance). That is simply no compliance.

The Bank also relies on the opinion of the Tenth Court of Appeals in *Jensen v. Covington*. *See* 234 S.W.3d 198, 206–07 (Tex. App.—Waco 2007, pet. denied). But the *Jensen* court did not address the meaning that should be given to the term "paying" in section 34.21 or whether providing a promissory note to the purchaser constitutes "paying" within the meaning of this statute. *See id.* Instead, the *Jensen* court concluded that tender of the redemption amount would be sufficient to comply with section 34.21 and then examined whether the tender in that case was a sufficient tender. *See id.* The *Jensen* case is not on point.

For the reasons stated above, to the extent the ordinary meaning of "paying" would allow an owner to redeem property under section 34.21(a) by giving a promissory note to the purchaser for all or part of the redemption amount, this construction is not reasonable in this context. Under the unambiguous language of the statute, an owner may

11

not provide a promissory note to the purchaser to satisfy the requirement of "paying" the redemption amount under section 34.21(a). Therefore, the Wittenbergs did not satisfy the requirements of section 34.21(a). But this conclusion does not end the analysis because, as discussed in the following section, the Bank asserts that the doctrine of quasi-estoppel precludes Stockdick from denying that the Deed effected a redemption of the Property. Under this doctrine, Stockdick may be estopped from asserting under section 34.21(a) that no redemption occurred in December 2007. *See, e.g., Forney 921 Lot Development Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 266–70 (Tex. App.— Dallas 2011, pet. filed) (holding that quasi-estoppel precluded contracting party from exercising its statutory right to terminate a contract under Water Code section 49.452(f)); *Brooks v. Brooks*, 257 S.W.3d 418, 423–24 (Tex. App.—Fort Worth 2008, pet. denied) (holding that quasi-estoppel precluded ex-husband from asserting his rights under settlement agreement and under Family Code section 6.602).

**The trial court erred by granting summary judgment based upon Stockdick's first and second summary-judgment grounds.**

In its first summary-judgment ground, Stockdick asserted that the Wittenbergs did not redeem the Property because they did not comply or substantially comply with the requirement that they pay Stockdick $92,500 in cash, which was the twenty-five percent premium required by section 34.21. *See* TEX. TAX CODE ANN. § 34.21(a). In its second summary-judgment ground Stockdick asserted that it maintained superior title to the Property by reserving a vendor's lien to secure payment of the Note. In response, the Bank asserted that the doctrine of quasi-estoppel precluded Stockdick from denying that the Deed effected a redemption of the Property.[9]

---

[9] The Bank sufficiently raised the defense of quasi-estoppel. *See Steubner Realty 19, Ltd. v. Cravens Road 88, Ltd.*, 817 S.W.2d 160, 164 (Tex. App.—Houston [14th Dist.] 1991, no writ) (holding that a pleading of estoppel is sufficient to raise quasi-estoppel); *Eckland Consultants, Inc. v. Ryder, Stillwell, Inc.*, 176 S.W.3d 80, 87, n.5 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (same as *Steubner Realty 19*). Though in its response to Stockdick's summary-judgment motion the Bank did not specifically use the term "quasi-estoppel," the substance of the Bank's discussion of estoppel was sufficient to raise the affirmative defense of quasi-estoppel. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 155–56 & n.1 (Tex. 2004); *Coastal Cement Sand, Inc. v. First Interstate Credit Alliance, Inc.*, 956 S.W.2d

The doctrine of quasi-estoppel precludes a person from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *See Steubner Realty 19, Ltd. v. Cravens Road 88, Ltd.*, 817 S.W.2d 160, 164 (Tex. App.—Houston [14th Dist.] 1991, no writ). This doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one in which it acquiesced, or from which it accepted a benefit. *See Curry v. Pickett*, No. 14-09-00188-CV, 2010 WL 3353952, at *4 (Tex. App.—Houston [14th Dist.] Aug. 26, 2010, no pet.) (mem. op.); *Steubner Realty 19, Ltd.*, 817 S.W.2d at 164. Thus, under principles of quasi-estoppel, a person may not accept the benefits of a transaction or statute and then take a subsequent inconsistent position to avoid corresponding obligations or effects. *See Cambridge Prod., Inc. v. Geodyne Nominee Corp.*, 292 S.W.3d 725, 732 (Tex. App.—Amarillo 2009, pet. denied); *Brooks*, 257 S.W.3d at 423–24; *Mulvey v. Mobil Producing Texas and New Mexico, Inc.*, 147 S.W.3d 594, 607–08 (Tex. App.—Corpus Christi 2004, pet. denied). In its appellate brief, Stockdick states that parties can agree to modify their statutory rights by insisting on some but not all of these rights. Stockdick indicates that it made such an agreement in December 2007, but that the Wittenbergs did not comply with the terms of that agreement and therefore failed to satisfy the requirements of section 34.21, as modified by the parties' agreement.

Stockdick concedes that the December 2007 transaction between the Wittenbergs and Stockdick constituted an agreement by Stockdick as to the manner by which the Wittenbergs could redeem the Property, and Stockdick cites the documents from this transaction, including the Deed, as evidence of this agreement. This concession raises the issue of the terms to which Stockdick agreed in December 2007. In addition, the Bank argues that the doctrine of quasi-estoppel precludes Stockdick from asserting that the Deed did not effect a redemption. This raises the issue of whether Stockdick took the position in the Deed that the Wittenbergs had redeemed the Property in December 2007.

562, 565 (Tex. App.—Houston [14th Dist.] 1997, pet. denied); *Steubner Realty 19, Ltd.*, 817 S.W.2d at 164; *Allen v. City of Baytown*, No. 01-09-00914-CV, 2011 WL 3820963, at *7 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, no pet.); *Coleman v. Revak*, No. 01-07-00438-CV, 2008 WL 2466276, at *2 (Tex. App.—Houston [1st Dist.] June 19, 2008, no pet.); *Eckland Consultants, Inc.*, 176 S.W.3d at 87, n.5.

13

Stockdick asserts that it did not take the position in the Deed that the Deed effected a redemption; rather, Stockdick asserts that it agreed the Wittenbergs could redeem the Property by paying $370,000 in cash and then paying on or before July 31, 2008, the amounts due under the Note.

The Deed is subject to the general rules of contract construction. *See Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Brown v. Havard*, 593 S.W.2d 939, 941 (Tex. 1980); *Marzo Club, LLC v. Columbia Lakes Homeowners Ass'n*, 325 S.W.3d 791, 798 (Tex. App.—Houston [14th Dist.] 2010, no pet.). In construing the Deed, this court's primary objective is to ascertain and give effect to the intentions of the parties as expressed in the Deed. *See Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). To ascertain the parties' true intentions, this court must examine the entire Deed in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). Whether the Deed is ambiguous is a question of law for the court. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). The Deed is ambiguous if its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *See id.*

Section 34.21 indicates that after the owner of real property sold at a tax sale redeems the property from the purchaser under section 34.21(a), the purchaser should give the owner a quitclaim deed. *See* TEX. TAX CODE ANN. § 34.21(f). The undisputed summary-judgment evidence shows that Susan Wittenberg held title to the Property when it was sold at the tax sale and that Stockdick purchased the Property at the tax sale for $370,000.[10] In the Deed, Stockdick states that it conveyed to the Wittenbergs all of

---

[10] Stockdick concedes and the record reflects that Tribus conveyed title to the Property to Susan Wittenberg by a deed filed for record in June 2006. The summary-judgment evidence does not reflect that title to the Property was conveyed back to Tribus before the tax sale on June 5, 2007. Nonetheless, Stockdick asserts in its appellate brief that Tribus owned the Property at the time of the tax sale on June 5, 2007. That Tribus owned the Property when the tax collection suit was filed and that Tribus was liable for payment of the taxes did not prevent Tribus from conveying title to the Wittenbergs before the tax sale. *See* TEX. TAX CODE ANN. § 32.07 (West 2012) (stating that, with exceptions that do not apply to the case under review, property taxes are the personal obligation of the person (including an entity) who owns the

14

Stockdick's right, title, and interest in the Property, without warranty. Therefore, the Deed was a quitclaim deed, the type of deed used to effect a redemption of real property under section 34.21(a). *See id.*; *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 486–87 (Tex. 2005) (concluding that document was a quitclaim deed because in that document a partnership stated that it conveyed all of its right, title, and interest in certain property, without warranty). As stated in the Deed, the consideration for the Deed was $370,000 in cash and the Note.

The Deed, which was executed by Stockdick and filed for record in the Harris County Real Property Records, expressly recites that it "is executed pursuant to redemption of the Property by [the Wittenbergs] from [the tax sale in question]." Under precedent from the Supreme Court of Texas "pursuant to" redemption of the Property means "in carrying out" redemption of the Property. *See Syntax, Inc. v. Hall*, 899 S.W.2d 189, 191–92 (Tex. 1995); *see also* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 454 (1987 ed.) (defining "pursuant to" as "in carrying out"). Therefore, by stating in the Deed that the Deed was executed pursuant to redemption of the Property by the Wittenbergs from the tax sale in question, Stockdick stated in the Deed that the Deed was executed in carrying out a redemption of the Property by the Wittenbergs. *See Syntax, Inc.*, 899 S.W.2d at 191–92; Garner, *supra*, at 454. In addition, if the redemption were not to occur until the Note was paid in full, then one would expect that a quitclaim deed would not be executed until after the Note was paid. *See* TEX. TAX CODE ANN. § 34.21(f). The fact that Stockdick executed a quitclaim deed in December 2007 suggests that the redemption was occurring then. In addition, the principal amount of the Note was equal to the redemption premium. But, if the parties intended redemption to occur in the future, as the majority concludes, then the Wittenbergs would be paying more than the statutory redemption amount.[11] For example, on July 31, 2008, $98,582.19 was due

property on January 1 of the year for which the tax is imposed and that such an owner is not relieved of this personal obligation because it no longer owns the property).

[11] The majority suggests that Stockdick has complied with all applicable provisions of the Tax Code. *See ante* at pp. 12–13, n.15. But Stockdick signed the Deed, which reasonably could be interpreted as effecting a redemption in exchange for cash and a promissory note, rather than for cash only, as

15

under the Note, which is more than six thousand dollars in excess of the redemption premium of $92,500.[12]

On the other hand, in the Deed, Stockdick states that the Note was "secured by vendor's lien and superior title retained herein in favor of [Stockdick]" (hereinafter, "Vendor's Lien Language"). The Vendor's Lien Language in the Deed indicates that, as between Stockdick and the Wittenbergs, Stockdick retained superior title to the Property, giving Stockdick the option to treat the Deed as an executory contract and to choose to rescind this contract. *See Minter v. Burnett*, 38 S.W. 350, 353 (Tex. 1896) (stating that reservation to grantor of superior title is only for purpose of enforcing payment of purchase money and has no application as between grantee and third parties); *Lusk v. Mintz*, 625 S.W.2d 774, 775 (Tex. Civ. App.—Houston [14th Dist.] 1981, no writ) (discussing grantor's right to rescind based on vendor's lien). Stockdick also had the option to seek judicial foreclosure of the vendor's lien or to pursue nonjudicial foreclosure under the deed of trust.

Stockdick chose to pursue foreclosure under the deed of trust and did not seek rescission based on the vendor's lien. Nonetheless, the presence of language reserving a vendor's lien and superior title, with the accompanying right to rescind the Deed, conflicts with the language indicating that the Deed is effecting a redemption of the tax sale. Such a redemption would restore title to the Property to what it was before the tax sale—the Wittenbergs holding title subject to the Bank's Lien—except that the tax liens would be discharged. *See Assocs. Home Equity Servs. Co. v. Hunt*, 151 S.W.3d 559, 561–62 (Tex. App.—Beaumont 2004, no pet.). One reasonably could construe the Vendor's Lien Language as reflecting an intent to override the Deed's language stating that the Deed was executed in carrying out a redemption. Under this construction, no

---

contemplated by section 34.21. In addition, even under Stockdick's interpretation of its agreement with the Wittenbergs as to how they could redeem the Property, the Wittenbergs were required to pay more than the amount specified in the Tax Code ($462,500) to redeem the Property. *See* TEX. TAX CODE ANN. § 34.21(a).

[12] The redemption premium was twenty-five percent until March 20, 2009, the first anniversary of the date on which the purchaser's deed was filed for record. *See* TEX. TAX CODE ANN. § 34.21(a).

redemption could have occurred in December 2007.

But it is also reasonable to construe the conflicting language as reflecting an intent to effect a redemption of the Property in December 2007, subject to Stockdick's right to rescind the redemption if the Wittenbergs defaulted under the Note, as opposed to foreclosing upon Stockdick's vendor's lien or its deed-of-trust lien. Under a third reasonable construction of the Deed's language, the conflicting parts could be construed as reflecting an intent to negate the rescission remedy that ordinarily goes along with a vendor's lien. Under this construction, the parties intended to effect a redemption in December 2007, and to secure payment of the Note with the vendor's lien and the deed-of-trust lien, but not to give Stockdick a right to rescind the December 2007 redemption.[13]

The inescapable conclusion is that the Deed is reasonably susceptible to more than one interpretation and thus is ambiguous[14] as to whether Stockdick took the position that the Deed effected a redemption that occurred in December 2007.[15] *See Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996); *Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex. 1983); *A.W. Wright & Assocs., P.C. v. Glover, Anderson, Chandler & Uzick, L.L.P.*, 993 S.W.2d 466, 470 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *Gibson v. Bentley*, 605 S.W.2d 337, 338–39 (Tex. Civ. App.— Houston

---

[13] This analysis is relevant to the question of whether the trial court erred in granting summary judgment based upon a genuine fact issue regarding quasi-estoppel. The Bank was not required to plead rescission.

[14] Even if the Bank has not asserted or pleaded that the Deed is ambiguous, this court still may conclude that the Deed is ambiguous. *See Watkins v. The Krist Law Firm, P.C.*, No. 14-02-00291-CV, 2003 WL 21786173, at *3–5 (Tex. App.—Houston [14th Dist.] Aug. 5, 2003, pet. dism'd) (mem. op.) (holding that contract was ambiguous even though the parties agreed that the contract was unambiguous); *City of Bunker Hill Vill. v. Mem'l Vills. Water Auth.*, 809 S.W.2d 309, 310–11 (Tex. App.—Houston [14th Dist.] 1991, no writ) (holding that court was not bound by parties' agreement that contracts were unambiguous and holding that contracts were ambiguous).

[15] On rehearing, Stockdick asserts that finding an ambiguity in this regard "casts a cloud on every real estate vendor's lien transaction in the state." But the parties have not cited and research has not revealed any other Texas case involving a quitclaim deed in which the grantor reserved a vendor's lien and also stated that the deed was executed pursuant to redemption of the property from a tax sale. The case under review does not involve a deed outside of this redemption context, in which the grantor is simply conveying real property with a warranty and reserving a vendor's lien. Therefore, an ambiguity finding in this case would not have the widespread application and ramifications that Stockdick envisions.

[14th Dist.] 1980, writ ref'd n.r.e.). Considering all the evidence in the light most favorable to the Bank, crediting evidence favorable to the Bank if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, reasonable and fair-minded jurors could differ in their conclusions as to whether Stockdick took the position in the Deed that the Deed effected a redemption of the Property in December 2007.[16] *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Steubner Realty 19, Ltd.*, 817 S.W.2d at 164. After the Wittenbergs failed to pay the Note, Stockdick asserted that no redemption had occurred in December 2007, and that Stockdick is entitled to keep the $370,000. Under the applicable standard of review, if Stockdick previously had taken an inconsistent position in this regard, a genuine fact issue exists as to whether it would be unconscionable to allow Stockdick to maintain that no redemption occurred in December 2007, given that Stockdick previously had acquiesced in or accepted a $370,000 benefit from an inconsistent position.[17] *See Steubner Realty 19, Ltd.*, 817 S.W.2d at 164.

---

[16] The Bank asserts it had no knowledge or notice of the proceedings in the tax court that "resulted in Sockdick's obtaining the [Remaining Proceeds] while ignoring [the Bank's] statutory priority to the [Remaining Proceeds]." Nonetheless, the Bank does not argue that it lacked an opportunity to redeem the Property. Rather, the Bank argues that it is entitled to rely upon the Deed as evidence that the Wittenbergs redeemed the Property in December 2007, thereby obviating the need for the Bank to redeem the Property. Under the Bank's interpretation of the Deed, there was no need for the Bank to redeem the Property after December 10, 2007, when the Wittenbergs redeemed the Property, thereby reinstating the Bank's Lien. The majority indicates that any prior inconsistent position by Stockdick that the Deed effected a redemption in December 2007, was a position taken only vis- -vis the Wittenbergs. *See ante* at p. 11, n.13. But the alleged position was taken in the Deed, which was filed for record on December 10, 2007, in the Harris County Real Property Records. Therefore, the alleged inconsistent position was not taken only as to the Wittenbergs but as to the public at large, including the Bank.

[17] The majority concludes, in the alternative, that as a matter of law Stockdick has not engaged in unconscionable conduct because Stockdick has been asserting its statutory or contractual rights. *See ante* at pp. 12–13, n.15. But, Texas courts have held that a person may be estopped under the doctrine of quasi-estoppel from asserting the person's statutory or contractual rights. *See Forney 921 Lot Development Partners I, L.P.*, 2011 WL 3925746, at *6–10 (holding quasi-estoppel precluded contracting party from exercising its statutory right to terminate a contract); *Cambridge Prod., Inc.*, 292 S.W.3d at 732 (holding quasi-estoppel precluded contracting party from exercising its contractual rights); *Brooks*, 257 S.W.3d at 423–24 (holding that quasi-estoppel precluded ex-husband from asserting his rights under settlement agreement and under Family Code section 6.602); *Mulvey*, 147 S.W.3d at 607–08 (holding quasi-estoppel precluded party from asserting its preferential right to purchase under a contract); *Eckland Consultants, Inc.*, 176 S.W.3d at 87–88 (holding quasi-estoppel precluded contracting party from asserting its rights under a provision of the contract).

Therefore, a genuine fact issue exists as to whether Stockdick is precluded under the doctrine of quasi-estoppel from denying that in December 2007, the Wittenbergs redeemed the Property through the Deed.[18] *See id.* The trial court erred to the extent it granted Stockdick's motion for summary judgment based upon the first two grounds.

### *The majority contradicts binding precedent regarding what a nonmovant must do to raise an affirmative defense in response to a traditional summary-judgment motion.*

In its holding regarding quasi-estoppel, the majority does not reach the merits of this affirmative defense. *See ante* at pp. 11–15. Instead, the majority finds procedural default, concluding that the Bank failed to sufficiently raise the defense of quasi-estoppel in its summary-judgment response. *See id.* The majority determines that in this response, the Bank failed to present sufficient argument to raise quasi-estoppel in response to Stockdick's summary-judgment motion. *See id.* at pp. 12–13. Specifically, the majority concludes that the Bank failed to raise any fact issue regarding this defense because "the Bank did not present or argue all of the elements of the quasi-estoppel affirmative defense in its response to Stockdick's motion." *Ante* at pp. 13–14. In this strained analysis, the majority contradicts binding precedent under which the Bank's summary-judgment response is sufficient to expressly raise the defense of quasi-estoppel. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009) (holding that the

---

[18] The majority claims that the Bank was a "stranger" to the tax sale and the Wittenbergs' efforts to redeem the Property. As the holder of the first lien that was foreclosed in the tax sale and that would be revived in any redemption of the Property, the Bank was hardly a stranger as the majority suggests. *See ante* at p. 11, n.13. In addition, the majority cites no Texas case requiring mutuality of the parties before a party can assert quasi-estoppel. *See id.* The main case cited by the majority applies North Carolina law. The other case does not apply quasi-estoppel; instead, it applies an old line of Texas cases under which a party is estopped in a subsequent judicial proceeding from taking a position contrary to a position he took in a former judicial proceeding, where the latter position is to the prejudice of the adverse party and the parties and the questions are the same. *See Swilley v. McCain*, 374 S.W.2d 871, 875–76 (Tex. 1964) (citing *Smith v. Chipley*, 16 S.W.2d 269, 275–76 (Tex. 1929) and similar cases). When listing the elements of quasi-estoppel, both the Supreme Court of Texas and this court have listed elements significantly different from the elements listed in *Swilley* and have not imposed any mutuality requirement. *Compare Swilley*, 374 S.W.2d at 875–76, *with Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000), and *Steubner Realty 19, Ltd.*, 817 S.W.2d at 164.

requirement that summary-judgment grounds be expressly and specifically stated is analogous to the specificity required of a party's pleadings and is intended to provide the opposing party with adequate information regarding the summary-judgment issues); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 155–56 & n.1 (Tex. 2004) (concluding that party raised the defense of equitable estoppel in its pleadings even though it did not expressly state all of the elements of equitable estoppel); *Westchester Fire Ins. Co. v. Alvarez*, 576 S.W.2d 771, 772–73 (Tex. 1978) (concluding that requirement of Texas Rule of Civil Procedure 166a(c) that parties expressly state summary-judgment grounds parallels the requirements applicable to pleadings under Texas Rules of Civil Procedure 45(b) and 47(a)), *overruled on other grounds by*, *City of Houston v. Clear Creek Basin Auth*., 589 S.W.2d 671, 678 (Tex. 1979); *Dworschak v. Transocean Offshore Deepwater Drilling, Inc*., 352 S.W.3d 191, 200 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (same as *Timpte Indus., Inc.*); *Coastal Cement Sand, Inc. v. First Interstate Credit Alliance, Inc.*, 956 S.W.2d 562, 565 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (holding that summary-judgment grounds may be stated concisely, without detail and without argument); *Steubner Realty 19, Ltd.*, 817 S.W.2d at 164 (holding that express assertion of estoppel is sufficient to raise the affirmative defense of quasi-estoppel). Today, the majority increases the burden that a nonmovant must satisfy to raise an affirmative defense in a summary-judgment response. Under the majority's analysis, the nonmovant must provide argument regarding the defense and also must expressly state each essential element of the defense. *See ante* at pp. 11–15. Under applicable law, these extra steps are not required to expressly raise a defense in a summary-judgment response. *See Timpte Indus., Inc.*, 286 S.W.3d at 311; *Joe*, 145 S.W.3d at 155–56 & n.1; *Westchester Fire Ins. Co.*, 576 S.W.2d at 772–73; *Dworschak*, 352 S.W.3d at 200; *Coastal Cement Sand, Inc.*, 956 S.W.2d at 565; *Steubner Realty 19, Ltd.*, 817 S.W.2d at 164. This court should not create new requirements not imposed by the Supreme Court of Texas.

As with the rules of pleading, the intent of the requirement that a movant expressly state the summary-judgment grounds or that the nonmovant expressly state affirmative

20

defenses is to provide the opposing party with fair notice of the issues. *See Timpte Indus., Inc.*, 286 S.W.3d at 311; *Westchester Fire Ins. Co.*, 576 S.W.2d at 772–73; *Dworschak*, 352 S.W.3d at 200. But, argument or analysis of the evidence is not required; instead, a concise identification of a liability theory or affirmative defense is sufficient to raise that theory or defense.[19] *See Joe*, 145 S.W.3d at 155–56 & n.1; *Coastal Cement Sand, Inc.*, 956 S.W.2d at 565; *Steubner Realty 19, Ltd.*, 817 S.W.2d at 164; *Allen v. City of Baytown*, No. 01-09-00914-CV, 2011 WL 3820963, at *7 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, no pet.) (holding that summary-judgment ground may be raised in a footnote that concisely states the ground without detail or argument) (mem. op.); *Coleman v. Revak*, No. 01-07-00438-CV, 2008 WL 2466276, at *2 (Tex. App.—Houston [1st Dist.] June 19, 2008, no pet.) (holding that summary-judgment ground may be raised by merely identifying the claim or defense and that argument or discussion of the evidence is not required to raise defense) (mem. op.). The Bank met this standard.

### *The Bank sufficiently raised the affirmative defense of quasi-estoppel in its summary-judgment response.*

In its petition the Bank invoked estoppel against "Stockdick's attempts to disclaim its own redemption deed," sufficiently pleading quasi-estoppel. *See Steubner Realty 19, Ltd.*, 817 S.W.2d at 164 (holding that a pleading of estoppel is sufficient to raise the defense of quasi-estoppel); *Eckland Consultants, Inc. v. Ryder, Stillwell, Inc.*, 176 S.W.3d 80, 87, n.5 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (same as *Steubner Realty 19*). Then, in its summary-judgment response, the Bank stated as follows:

- A quitclaim deed is the statutory method of conveyance after a redemption.

- The Deed documented an accord and satisfaction between Stockdick and the Wittenbergs.

- Having taken title under the accord and satisfaction agreement, Stockdick is now

---

[19] The majority relies upon the plurality opinion in *McConnell v. Southside Independent School District*. *See ante* at p. 14, n.17. In this opinion, the plurality states that summary-judgment grounds may be stated concisely, without detail or argument. *See McConnell v. Southside Independent School District*, 858 S.W.2d 337, 340 (Tex. 1993) (plurality op.).

estopped to assert that it did not enter into an accord and satisfaction of its claim for the redemption consideration.

- Stockdick cannot take the benefit of its accord and satisfaction agreement and then disclaim that agreement.

- The doctrine of estoppel applies generally to Stockdick's attempt to take the benefits of its accord and satisfaction agreement and then deny the redemption and the Deed.[20]

The Bank sufficiently raised the affirmative defense of quasi-estoppel in its summary-judgment response.[21] *See Joe*, 145 S.W.3d at 155–56 & n.1; *Coastal Cement Sand, Inc.*, 956 S.W.2d at 565; *Steubner Realty 19, Ltd.*, 817 S.W.2d at 164; *Allen v. City of Baytown*, 2011 WL 3820963, at *7; *Coleman v. Revak*, 2008 WL 2466276, at *2; *Smith v. Lagerstam*, 2007 WL 2066298, at *2–3 (Tex. App.—Austin Jul. 19, 2007, no pet.) (mem. op.); *Eckland Consultants, Inc.*, 176 S.W.3d at 87, n.5; *Conquistador Petroleum, Inc. v. Chatham*, 899 S.W.2d 439, 441–42 (Tex. App.—Eastland 1995, writ denied); *Lochabay v. Southwestern Bell Media, Inc.*, 828 S.W.2d 167, 170 & n.2 (Tex. App.—Austin 1992, no writ).  The court errs in holding the Bank failed to do so.

### *The majority's construction of the Deed conflicts with binding precedent from the Supreme Court of Texas.*

The majority concludes that as a matter of law Stockdick has never taken the position that the Wittenbergs redeemed the Property in December 2007.  *See ante* at pp. 11–12, n.14.  The Deed signed by Stockdick contains the statement that the Deed "is

---

[20] In the paragraph following this statement in the Bank's response, the Bank asserted that, by demanding cancellation of the Bank's $650,000 deed-of-trust lien against the Property, Stockdick was seeking "an unconscionable additional windfall."  The Bank did not expressly link this assertion with its defense that Stockdick was estopped from denying that the Deed effected a redemption; but, the Bank stated that it would be unconscionable to allow Stockdick to succeed in its position that no redemption occurred.

[21] The majority distinguishes the summary-judgment rule from the rules for pleading, concluding that cases like *Steubner Realty* and *Eckland Consultants* have no application.  *See ante* at p. 13–14, n.16.  But the Supreme Court of Texas and this court have equated the standard for determining whether a summary-judgment ground or defense has been raised with the standard for determining whether a claim or defense has been raised in the pleadings.  *See Timpte Indus., Inc.*, 286 S.W.3d at 311; *Westchester Fire Ins. Co.*, 576 S.W.2d at 772–73; *Dworschak*, 352 S.W.3d at 200.

executed pursuant to redemption of the Property by Grantee from that certain tax sale conducted on or about June 5, 2007 under Cause No. 2005-74535." Nonetheless, the majority concludes that the only reasonable interpretation of the Deed, deed of trust, and the Note is that Stockdick never took the position that the Deed effected a redemption in December 2007. *See id*. In doing so, the majority contradicts binding precedent from the Supreme Court of Texas under which "pursuant to" means "in carrying out." *See Syntax, Inc.*, 899 S.W.2d at 191–92. Thus, by stating in the Deed that the Deed was executed pursuant to the Wittenbergs' redemption of the Property, Stockdick took the position that the Deed was executed in carrying out a redemption of the Property by the Wittenbergs. *See id*. By concluding that as a matter of law Stockdick never took the position that the Wittenbergs redeemed the Property in December 2007, the majority goes against this precedent.

**The trial court erred in granting summary judgment on the ground that the Bank waived its right to assert that a redemption occurred.**

In its third summary-judgment ground, Stockdick asserted that as a matter of law the Bank waived its contention that the Wittenbergs redeemed the Property. Stockdick relies on a September 2008 letter from David Petroni of Carrington Mortgage Services, LLC. In the letter, Petroni states that Carrington has an active loan on the Property and wants to regain possession of the Property. Petroni asks for a redemption quote. The letter indicates that Petroni believed in September 2008 that the Property had not been redeemed. But, there is no summary-judgment evidence that Carrington or Petroni were agents of the Bank. Even if they were the Bank's agents, there is no evidence that Petroni was aware of the Deed, and the belief of one of the Bank's agents that no redemption had occurred would not operate to waive as a matter of law the Bank's right to assert that a redemption had occurred or that Stockdick was estopped from denying that a redemption had occurred.

Stockdick also asserts that the Bank made the conscious decision not to redeem the Property, not to participate in the foreclosure sale on November 4, 2008, and not to

23

seek an injunction of this sale.[22]  Presuming for the sake of argument that the Bank made these conscious decisions, the Bank would not thereby waive its right to assert that a redemption had occurred or that Stockdick was estopped from denying that a redemption had occurred.

The only authority that Stockdick cites to support its argument is *Rotge v. Murphy*, a case that did not involve either a deed like the one in the case under review or issues of estoppel or whether a redemption had occurred.  *See* 198 S.W.2d 932, 935–36 (Tex. Civ. App.—San Antonio 1946, writ ref'd n.r.e.).  In *Rotge*, the former owner did not make any attempt to redeem the property before the end of the redemption period; rather, she filed suit alleging that the tax sale was void.  *Id.*  She then argued that, if she were unsuccessful in that suit, she should be allowed to redeem the property even though the statutory deadline had passed.  *Id.*  The *Rotge* court did not hold that the owner had waived her right to redeem by filing suit; instead, the court held that it was too late for her to redeem the property.  *Id.*  The summary-judgment evidence does not prove as a matter of law that the Bank intentionally relinquished its right to pursue the claims it is asserting in this case.  The trial court erred to the extent it granted Stockdick's summary-judgment motion based upon the third ground.

**The trial court erred in granting summary judgment on the ground that the Bank cannot assert its claims under the Declaratory Judgments Act.**

In its fourth summary-judgment ground, Stockdick asserted that the Bank cannot assert these claims under the Declaratory Judgments Act because the Bank seeks a determination of title to real property that may be made only in a trespass-to-try-title action.  The Bank has sought relief only under the Declaratory Judgments Act.  Under this statute, "[a] person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or

---

[22]  Notably, Stockdick informed Petroni that the payoff amount was $113,777.54, an amount more than $21,000 greater than the redemption premium for the Property.

franchise and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2012). In this suit, the Bank seeks a declaratory judgment determining issues as to whether a redemption of the Property occurred and whether the Bank's Lien is still a valid lien on the Property. These issues involve the construction of the Deed.

Stockdick is the current owner of the Property. If the Bank succeeds in its arguments regarding the Deed and estoppel, then the Property is subject to the Bank's Lien.[23] In any event, title to the Property or to the liens is not in question. Stockdick relies upon *Southwest Guaranty Trust Co. v. Hardy Road 13.4 Joint Venture. See* 981 S.W.2d 951 (Tex. App.–Houston [1st Dist.] 1998, pet. denied). In that case, the court determined that the substance of the plaintiff's case was a suit to quiet title, in which attorney's fees were not recoverable. *See id*. at 957. The court held that the trial court did not abuse its discretion in denying attorney's fees because the trial court could have determined that the plaintiff could not use the Declaratory Judgments Act to obtain attorney's fees for a case that was really a suit to quiet title. *See id*. Stockdick also cites other cases in which courts have held that the Declaratory Judgments Act cannot be used when the substance of the suit is one to remove a cloud on title to real property or a suit over a boundary dispute between owners of real property. The substance of the Bank's suit is not one to quiet title, to remove a cloud on title to real property, or to resolve a boundary dispute. Therefore, these cases are not on point.

The relief that the Bank seeks is available under the Declaratory Judgments Act, and the Bank is not required to pursue a trespass-to-try-title action. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a); *Chase Home Finance, L.L.C. v. Cal Western*

---

[23] If the Bank were to succeed in its estoppel arguments, then Stockdick would be estopped from denying that a redemption occurred in December 2007, resulting in the reinstatement of the Bank's Lien. Because Stockdick's Lien would be subordinate to the Bank's Lien, the foreclosure of Stockdick's Lien would not affect the Bank's Lien. The majority suggests that the Bank is challenging Stockdick's right to foreclosure of Stockdick's Lien. The Bank is not challenging this foreclosure; rather, the Bank is seeking a declaration that the Bank's Lien is senior and superior to Stockdick's Lien notwithstanding the foreclosure of Stockdick's Lien.

*Reconveyance Corp.*, 309 S.W.3d 619, 633–34 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Red Rock Props. 2005, Ltd. v. Chase Home Fin., L.L.C.*, No. 14-08-00352-CV, 2009 WL 1795037, at *5–6 (Tex. App.—Houston [14th Dist.] June 25, 2009, no pet.) (mem. op.); *Aquaduct, L.L.C. v. McElhanie*, 116 S.W.3d 438, 444–45 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Burd*, 982 S.W.2d at 33 (affirming trial court's disposition of competing claims under the Declaratory Judgments Act as to whether a redemption occurred under section 34.21). The trial court erred to the extent it granted Stockdick's motion for summary judgment based upon the fourth summary-judgment ground.

Because none of grounds in Stockdick's motion for summary judgment provide a basis for affirming the trial court's judgment, this court should conclude that the trial court erred in granting the motion.

**The trial court did not err in denying the Bank's summary-judgment motion.**

On appeal, the Bank also asserts that the trial court erred in denying the Bank's motion for summary judgment. Though the Bank raised various issues, including estoppel, in response to Stockdick's summary-judgment motion, the Bank did not assert estoppel in its motion. Instead, the Bank moved for summary judgment based only on the ground that, as a matter of law, the Wittenbergs redeemed the Property under section 34.21(a), and therefore the Bank's Lien is now a valid first lien on the Property. These arguments lack merit for the reasons addressed above. Therefore, the trial court did not err in denying the Bank's motion for summary judgment.

CONCLUSION

Under the unambiguous language of Tax Code section 34.21, an owner may not provide a promissory note to the purchaser to satisfy the requirement of "paying" any part of the redemption amount under section 34.21(a). Thus, the Wittenbergs did not satisfy the requirements of section 34.21(a) for redeeming the Property. Nonetheless, there are genuine fact issues as to the meaning of the ambiguous language of the Deed and as to whether Stockdick is precluded under the doctrine of quasi-estoppel from denying that

26

the Wittenbergs redeemed the Property through the Deed in December 2007. None of the grounds in Stockdick's summary-judgment motion provide a basis for affirming the trial court's judgment. Therefore, the trial court erred in granting this motion. Because the Bank did not prove its entitlement to summary judgment on the grounds asserted in its summary-judgment motion, the trial court did not err in denying this motion. Accordingly, this court should reverse the trial court's judgment and remand for further proceedings. Because this court does not do so, I respectfully dissent.

/s/    Kem Thompson Frost
Justice

Panel consists of Chief Justice Hedges and Justices Frost and Seymore. (Seymore, J., majority).