

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00099-CV

FLETCHER T. COOK, JR., APPELLANT

V.

CIMAREX ENERGY CO., PAC PRODUCTION COMPANY, MOONLIGHT
INVESTMENTS, LTD, AND TEXILVANIA, LTD, APPELLEES

On Appeal from the 84th District Court
Ochiltree County, Texas
Trial Court No. 14,376, Honorable Curtis Brancheau, Presiding

March 31, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Central to this case is whether Appellant, Fletcher T. Cook, Jr. granted Appellees – Cimarex Energy Company, PAC Production Company, Moonlight Investments, Ltd., and Texilvania, Ltd., (collectively Cimarex[1]) – a right-of-way across Cook's land to the

---

[1] The record does not show the relationship between Cimarex, PAC Production Company, Moonlight Investments, Ltd., and Texilvania, Ltd. We refer to the four defendants collectively as "Cimarex" for simplicity.

location of two wells that Cimarex operates. The district court rendered summary judgment in favor of Cimarex on two motions and denied Cook's motion for partial summary judgment on a claim for declaratory relief. Because we conclude that the releases in dispute are ambiguous and that neither party showed itself entitled to summary judgment, we reverse the judgment of the district court and remand the case for further proceedings.

**Background**

Cook owns the surface estate of sections 48, 49, and 129, Block 43, H&TC Ry. Co. Survey, Ochiltree County, Texas. To access this property from Highway 281 to the north, Cook holds an easement parallel to the western line of Section 136. Section 136 is immediately north of section 129 and section 129 is immediately north of section 48. Section 48 adjoins section 49. A diagram depicts the relevant tracts of land as follows:



In June 2007, Cook and Cimarex executed a "Contract of Release" providing for Cimarex's payment of surface damages and use of a road so that Cimarex could perform

drilling operations and maintenance on the Brownlee #2 well on section 49 pursuant to an oil and gas lease executed with third parties. The 2007 release states in relevant part:

> The undersigned Land Owner represents that he is the Land Owner of record of an interest in the surface and surface rights in and to the following described lands situated in the **County of Ochiltree, State of Texas, Section 49, Block 43-H & T C RR Survey** . . . on which Cimarex Energy Co. proposes to drill the **BROWNLEE #49-2** Well for and in consideration of **$12,500** to be paid by Cimarex Energy Co. the sufficiency of which is hereby acknowledged as full and final payment for surface damages, the undersigned does hereby release Cimarex Energy Co. . . . of any and all liability for surface damage done or to be done to said lands in connection with the parties' drilling operations and maintenance of oil and gas production on the subject tract of land. **This Release is intended to cover only those damages normally and typically associated with drilling and completion**.
>
> …
>
> 2.) Access will be from an existing road leading from Section 48 . . . **Cimarex is paying an additional $2,500 for a roadway easement across that part of Section 129 and Section 48** . . . for access to the drillsite in Section 49.
>
> …
>
> A payment of $15,000 is to be made to the following: [Cook]

(Boldface type in original).

In February 2012, Cimarex contracted with the Brownlees to drill two additional wells on section 49. On July 17, 2012, Cook signed a "contract of release" specific to each well for a consideration of $25,000 per release. In relevant part, the 2012 releases provide:

> The Undersigned Landowner represents that he is the Land Owner of record of the surface and surface rights in and to the following described lands situated in the County of Ochiltree, State of Texas, being Section 49, Block 43, H&TC Survey, on which Cimarex Energy Co. proposes to construct the surface location, reserve pit and road to drill the Brownlee 49 #3H [#4H] well (the "Well"), said Well surface hole

3

location being . . . in said section 49, for and in consideration of $25,000.00 to be paid by Cimarex Energy Co., the sufficiency of which is hereby acknowledged as full and final payment for surface damages and water use related [sic] the drilling, testing, completion, recompletion, reworking, reentry, producing, and operation of the Well, including the lease road and base material provided by Land Owner, reserve pit and frac pit.

This Release is intended to cover only those damages normally and typically associated with drilling, testing, completion, recompletion, reworking, re-entry, producing, and operation of the Well.

This agreement is subject to the surface provisions in those certain Oil and Gas leases between the mineral owners in said Section 49 and Cimarex Energy Co., dated February 22, 2012.

Disagreements arose between Cook and Cimarex surrounding the meaning of the 2012 releases' language regarding use of roads to the #3H and #4H drill sites. Cook has refused Cimarex's tender. In December 2014, Cook wrote a letter to Cimarex stating in relevant part:

Cimarex is using my private road thru 136, 129 and 49 [sic] to access your wells in 49. I find nothing in the law or leases which would require me to provide Cimarex with ingress or egress. You should get a county map and it will show you there is no public roads to these sections. Cimarex is using my private road and has not contributed any maintenance or repairs nor obtained permission to use same.

Cook filed suit against Cimarex in April 2017 alleging that use of the road over sections 129 and 48 constituted trespass and sought injunctive relief. Cimarex answered and filed a traditional motion for summary judgment in January 2018 alleging that its use of the road was authorized by Cook; alternatively, Cimarex urged the affirmative defenses of equitable estoppel, quasi-estoppel, and waiver.

4

The district court sustained Cimarex's objections to Cook's summary judgment affidavit and other evidence and rendered summary judgment that Cook take nothing on his claims of trespass and for injunctive relief. Upon Cimarex filing a second motion, the district court again sustained Cimarex's objections to Cook's summary judgment evidence; the court also denied Cook's motion for summary judgment and granted Cimarex's second motion for summary judgment. On March 5, 2019, it signed a final judgment decreeing that Cook take nothing by his claims. This appeal followed.

## Summary Judgment Standard

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex. 2009). The movant for summary judgment filing a traditional motion must establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215-16 (Tex. 2003). The court takes as true evidence favorable to the nonmovant, indulges every reasonable inference in favor of the nonmovant, and resolves any doubts in favor of the nonmovant. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005); *Knott,* 128 S.W.3d at 215. Interpretation of a contract involves questions of law we consider de novo. *Bluestone Nat. Res. II, LLC v. Randle*, No. 19-0459, 2021 Tex. LEXIS 206, at *10 n.21 (Tex. Mar. 12, 2021).

To prevail, a defendant moving for a "traditional" summary-judgment must negate at least one essential element of the plaintiff's cause of action or conclusively establish an affirmative defense to recovery. *KCM Fin. LLC v. Bradshaw,* 457 S.W.3d 70, 80 (Tex.

5

2015). Only if the movant meets its summary judgment burden does the burden shift to the nonmovant to produce evidence demonstrating the existence of a genuine issue of material fact precluding summary judgment. *Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222-23 (Tex. 1999).

## Analysis

The Supreme Court of Texas "has consistently defined the tort of trespass as encompassing three elements: (1) entry (2) onto the property of another (3) without the property owner's consent or authorization." *Envntl. Processing Sys., L.C. v. FPL Farming Ltd.,* 457 S.W.3d 414, 419, 425 (Tex. 2015). Through its summary judgment motion, Cimarex sought to conclusively negate the "lack-of-consent" element of Cook's trespass claim by arguing the 2012 releases evidenced "actual consent for Cimarex to come onto the property in question," and "provided Cimarex with the right to come on to [Cook's] land and to use his 'lease Road,'" Black's Law Dictionary defines "consent" as "[a] voluntary yielding to what another proposes or desires; agreement, approval, or permission regarding some act or purpose, esp. given voluntarily by a competent person; legally effective assent." BLACK'S LAW DICTIONARY 380 (11th ed. 2019).

The Court holds that Cimarex failed to conclusively prove consent and its affirmative defenses. Accordingly, we reverse the district court's summary judgment and remand.

<u>1. The language in the 2012 releases does not unambiguously grant Cimarex a right of way over Cook's road on sections 48 and 129.</u>

In construing any written contract, the primary objective is to determine the parties' intentions by construing the releases as a whole and interpreting the language according to its plain, ordinary, and generally accepted meaning "unless the lexical environment demands otherwise." *Bluestone Nat. Res. II,* 2021 Tex. LEXIS 206, at *10 n.21; *Frost Nat'l Bank v. L & F Distribs., Ltd.,* 165 S.W.3d 310, 311-12 (Tex. 2005) (per curiam). "An unambiguous contract—one whose meaning is certain and definite—will be enforced as written." *Bluestone Nat. Res. II,* 2021 Tex. LEXIS 206, at *10 n.21. A court is not concerned with what the parties meant but failed to express but with the intent expressed in the instrument. *See Goss v. Addax Minerals Fund, LP,* No. 07-14-00167-CV, 2016 Tex. App. LEXIS 4234, at *7-8 (Tex. App.—Amarillo Apr. 21, 2016, pet. denied) (mem. op.) (deed interpretation). To determine the parties' intent, a court considers the entire writing and attempts to harmonize and give effect to all the contract's provisions. *Frost Nat'l Bank,* 165 S.W.3d at 312. A court must be particularly cautious of isolating individual words, phrases, or clauses and reading them out of the context of the document as a whole. *Alpert v. Riley,* 274 S.W.3d 277, 288 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). Of course, the language in a contract is to be given its plain, ordinary, and generally accepted meaning unless doing so would clearly defeat the parties' intent. *Petro Pro, Ltd. v. Upland Res., Inc.,* 279 S.W.3d 743, 749 n.3 (Tex. App.—Amarillo 2007, pet. denied).

All parties claim their proposed interpretation is governed by a simple reading of the 2012 releases. Notwithstanding the parties' positions, the Court possesses the

7

independent duty of assessing whether the releases are indeed unambiguous. *See URI, Inc. v. Kleberg Co.*, 543 S.W.3d 755, 763 (Tex. 2018) (conducting independent review of contract's terms despite parties' claims that contract was unambiguous); *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993) (finding ambiguity in agreement despite absence of pleaded ambiguity). "If, even after applying all 'pertinent construction principles,' a contract's language remains susceptible 'to two or more reasonable interpretations,' then the agreement is ambiguous. *Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144 (Tex. 2020) (quoting *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015)). When a contract is found to be ambiguous, its meaning must usually be determined by a finder of fact, which may consider the parties' evidence of their subjective intent. *Endeavor Energy Res.*, 615 S.W.3d at 148.

We thus begin with the most important source of the parties' intentions: the plain meaning from the text of the 2012 releases. *See RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 121 (Tex. 2015). In a single sentence in the relevant language, the term "road" is mentioned twice. In one portion, Cook contractually agrees he is the landowner of the property "on which Cimarex Energy Co. **proposes to construct** the surface location, reserve pit **and road** to drill" the #3H and #4H wells. Later in the same sentence, consideration of $25,000 from Cimarex is discussed "as full and final payment for surface damages and water use related [sic] the drilling, testing, completion, recompletion, reworking, re-entry, producing and operation of the Well, **including the lease road** and base material provided by Land Owner . . . ." (emphasis added). Neither "road" nor "lease road" is defined in the 2012 releases.

8

Cimarex argues that the releases refer to two roads, with "the lease road" including Cook's existing road through tracts 129 and 48. Cimarex proposes that the other referenced "road" refers to a newly constructed road beginning on tract 49 at the terminus of the road to the Brownlee #2 well and continuing to the #3H and #4H wells. Our careful reading of the releases' text does not permit us to reach a single, definite meaning consistent with the interpretation of either party. Although reference to "the lease road . . . provided by Land Owner" alongside a proposed constructed road might, as Cimarex proposes, contemplate two roads, this does not resolve the consent question in the Appellee's favor. That is because nothing in the releases' text definitively shows the parties' intentions to grant Cimarex a right-of-way across Cook's other adjacent property.

The scope of the releases is expressly defined to acknowledge Cook's ownership of and to define surface activities upon section 49 only. Accordingly, even if payment of surface damages related to "the drilling . . . and operation of the Well" can be construed to include use of "the lease road," no certain or definite language in the text states Cook's consent to use the road beyond section 49 onto tracts 129 and 48.[2] To the extent that the district court's grant of summary judgment found as a matter of law that Cook consented for Cimarex to use his existing roads over tracts 129 and 48 to reach the #3H and #4H wells, we hold such a grant is not found in unambiguous text of the 2012 releases.[3] *Endeavor Energy Res.*, 615 S.W.3d at 148.

---

[2] Nor is additional support found in the February 22, 2012 lease. The lease expressly confines its scope to the "leased premises," *i.e.*, section 49.

[3] The parties urge various shades of the same argument though Cimarex's first motion for summary judgment, its second motion for summary judgment, and Cook's motion for partial summary judgment. It is unnecessary to further address the merits of Cimarex's second motion for summary judgment and Cook's motion for partial summary judgment because they necessarily depend on language we find ambiguous.

9

<u>2. Reference to extrinsic evidence reveals genuine issues of material fact regarding alleged consent for a right of way over Cook's road on sections 48 and 129.</u>

We next look at whether evidence extrinsic to the 2012 releases gives Cimarex consent to use tracts 129 and 48.[4] Cimarex argues that reference to the "lease road" sufficiently articulates the parties' mutual understanding for use of the road beyond tract 49 and over tracts 129 and 48.[5] We agree with Cook that genuine issues of material fact preclude a determination regarding consent as a matter of law.

The Supreme Court of Texas has long held that, as an exception to the statute of frauds, an otherwise-deficient identification of property on the face of a contract may be enforceable if the writing "furnish[es] *within itself*, or by reference to some other existing writing, *the means or data* by which the particular land to be conveyed may be identified with reasonable certainty." *Pickett v. Bishop*, 148 Tex. 207, 210, 223 S.W.2d 222, 224 (1949) (emphasis in original) (quoting *Wilson v. Fisher*, 144 Tex. 53, 56, 188 S.W.2d 150, 152 (1945)). In other words, a contract referring to "my property" may be sufficient to identify land when the writing reveals the precise property at issue or provides the means of ascertaining the property with reasonable certainty. *See Pickett*, 223 S.W.2d at 223 (holding extrinsic evidence must reveal "only one tract of land answering the description in the memorandum"); *Vinson v. Brown*, 80 S.W.3d 221, 227 (Tex. App.—Austin 2002, no pet.) ("If enough appears in the [document's] description so that a person familiar with

---

We conclude the trial court erred in granting Cimarex's second motion for summary judgment but did not err in denying Cook's motion for partial summary judgment.

[4] Cook challenges the district court's ruling that sustained Cimarex's objections under the parol evidence rule. We address Cook's complaint regarding evidentiary rulings later in this opinion.

[5] Similarly, at summary judgment, Cimarex argued that the phrase "lease road" is common parlance in the industry to include "roads necessary to access well locations." However, Cimarex supported its argument with no summary judgment evidence.

10

the area can locate the premises with reasonable certainty, it is sufficient to satisfy the Statute of Frauds.") (brackets added).

Here, we seek to examine whether the phrase "lease road" would provide reasonable certainty that the parties were referring to the existing road on sections 129 and 48. While a factfinder may ultimately determine from the extrinsic evidence that the "lease road" included the road on these tracts, the existence of genuine issues of material fact prevent this determination from being made as a matter of law. As an example, Cimarex points to portions of Cook's deposition answers as evidence of what the "lease road" means:

> Q. Now, you understand that we're here today based on a dispute regarding a lease road; is that right?
>
> A. It's whatever is in the pleadings.
>
> Q. All right. To your recollection, is there - are there issues other than Cimarex's use of the lease road?
>
> A. That's all that's in the petition.

Cook also drew a line on an exhibit to demarcate the road identified in the lawsuit:

> Q. I'm going to hand you a black Sharpie and ask you to trace the road- the lease road that is the issue raised in your lawsuit. Are you able to do that with Exhibit 2 and a Sharpie?
>
> A. The lease road?
>
> Q. Yes, the lease road that is the subject of your Original Petition.
>
> A. Well, I guess you'd have to start up here at the highway.
>
> Q. All right. And you're at the highway-well, is that-what highway is that?
>
> A. 281.

11

Q. Okay. All right. Thank you. And so we look at Exhibit 2 off of highway- off the highway between Sections 135 and 136 coming down through 128-Section 128 [sic] and Section 48 and into Section 49, that's the lease road that is the—the issue raised in your petition; is that right?

A. That's right.

Later in his deposition, however, Cook disagreed with the characterization of "lease road" to describe the road in sections 129 and 48:

Q. And to be accommodating, you can't get to the lease-the wellheads without coming down the lease road we've identified on Exhibit 2?

A. Well, let's look at it this way. You talk about the lease road being across 129 and 48. That is not a lease road. That is my personal, private road. So to call it a lease road, that's kind of a – you're kind of giving it the wrong name. I let you people use my personal, private road to get to your lease. Does that answer your question?

Q. You allowed Cimarex to use what—

A. My private road.

Q. To get to Section 49?

A. Yes, in order to be accommodating to Cimarex and to my cousins.

While such testimony may (or may not) indicate that Cook personally knew the "lease road" at issue in the lawsuit was intended to run through tracts 129 and 48, this evidence is not the same as identifying the reach of the "lease road" from within the language of the 2012 releases itself (or other writing existing in 2012) as required in *Pickett* and subsequent cases. *See Gates v. Asher*, 154 Tex. 538, 541, 280 S.W.2d 247, 248-49 (1955); *Pickett*, 223 S.W.2d at 223-24. Further, given the summary judgment standard of indulging all favorable evidence and reasonable inferences in favor of Cook as the nonmovant, we must conclude that Cimarex failed to carry its summary judgment burden

12

through the use of Cook's deposition testimony. We hold that the district court erred in granting Cimarex's motions for summary judgment.

### 3. The district court erred to the extent that it granted Cimarex's motion for summary judgment on account of affirmative defenses.

Because the district court did not state the reasons for its grant of summary judgment, it is necessary to determine whether Cimarex presented conclusive evidence of the affirmative defenses of equitable estoppel, quasi-estoppel, and waiver. Because we hold that Cimarex failed to conclusively prove these defenses, we hold that the district court erred in granting Cimarex's first motion for summary judgment.

*Equitable Estoppel*

Generally, equitable estoppel arises from conduct causing another party to materially alter its position in reliance on that conduct. *Plains Builders, Inc. v. Steel Source, Inc.,* 408 S.W.3d 596, 605-06 (Tex. App.—Amarillo 2013, no pet.). A party claiming an estoppel must prove: (1) a false representation or concealment of material facts, (2) made with knowledge, actual or constructive, of those facts, (3) with the intention that it should be acted on, (4) to a party without knowledge or a means of obtaining knowledge of the facts, (5) who detrimentally relies on the representation. *Id.* at 606.

The nub of Cimarex's argument is that Cook is estopped to claim a trespass because after Cimarex expended millions of dollars drilling the two horizontal wells on section 49 in reliance on the 2012 releases, Cook allegedly attempted to retract that right. But the releases do not conclusively establish the right of use claimed. Further, Cimarex failed to conclusively prove that Cook knowingly made a false representation of material

13

fact with the intention Cimarex would act on it. To the extent it is claimed that Cook withdrew verbal consent to Cimarex's use of his road after Cimarex had invested in drilling the #3H and #4H wells, the summary judgment evidence raises a fact question regarding whether Cook's verbal authorization of consent was permanent or described only as temporary. To the extent the district court rendered summary judgment in favor of Cimarex on an equitable estoppel defense, it erred.

*Quasi*-estoppel

Cimarex next argued under the doctrine of quasi-estoppel that Cook was estopped as a matter of law to claim Cimarex committed a trespass. Unlike equitable estoppel, quasi-estoppel does not require proof of a false statement or detrimental reliance. *Cambridge Prod. v. Geodyne Nominee Corp.,* 292 S.W.3d 725, 732 (Tex. App.—Amarillo 2009, pet. denied). Rather, it precludes a party from accepting the benefits of a transaction and then taking a subsequent inconsistent position to avoid corresponding obligations or effects. *Id.* It applies when it would be unconscionable to allow a person or party to maintain a position inconsistent with one in which he acquiesced or from which he accepted a benefit. *Id.* Estoppel by contract is simply "another way of saying that a party is bound by the terms of his or her contract." *Melton v. CU Members Mortg.*, 586 S.W.3d 26, 32 (Tex. App.—Austin 2019, pet. denied).

Cimarex's argument about Cook's alleged change of position depends, again, on the extent of the consent initially obtained by Cimarex: permanent or temporary, and over what tracts? We conclude the district court erred to the extent that it rendered summary judgment in Cimarex's favor on its affirmative defense of quasi-estoppel.

14

*Waiver*

Relying in large part on the language in the 2012 releases, Cimarex again argues that the evidence conclusively established Cook waived any right to eject Cimarex from his property as a trespasser. But for the reasons set forth above, we hold that the 2012 releases do not conclusively grant Cimarex a right-of-way across Cook's property; thus, the releases fail to conclusively establish Cook's alleged waiver. We conclude the district court erred if it rendered summary judgment in Cimarex's favor on its affirmative defense of waiver.

## 4. On remand, the district court should reassess its evidentiary rulings.

Cook also challenges the district court's rulings on Cimarex's evidentiary objections. Because we have held that the court's grant of summary judgment is not supported by unambiguous language in the releases or conclusive extrinsic evidence, we remand the suit to the district court for further proceedings. On remand, the district court should reassess the admissibility of evidence in light of this Court's reasons for remand. Two examples of evidentiary rulings for reconsideration are described below:

*The Parol Evidence Rule*

Among other items, Cook offered as summary judgment evidence in response to Cimarex's first motion for summary judgment a copy of the 2007 release. The district court sustained Cimarex's objection to the instrument on the ground that it violated the parol evidence rule. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Fitzgerald v. Water Rock Outdoors, LLC,* 536 S.W.3d 112, 119 (Tex. App.—Amarillo 2017, pet. denied). A trial court abuses its discretion when it rules

15

without regard for any guiding rules or principles. *Keeney v. Williams,* No. 07-19-00374-CV, 2020 Tex. App. LEXIS 7245, at *6 (Tex. App.—Amarillo Sep. 3, 2020, no pet.) (mem. op.) (internal quotation marks and citation omitted).

The parol evidence rule does not bar consideration of extrinsic evidence when the face of a contract is incapable of a definite legal meaning. *See Mobil Expl. & Producing United States v. Sunrise, Inc.*, No. 07-96-00023-CV, 1997 Tex. App. LEXIS 3741, at *7 (Tex. App.—Amarillo July 17, 1997, pet. denied) (not designated for publication). We conclude the district court abused its discretion in sustaining Cimarex's objections based on parol evidence. Because of our disposition of this appeal, it is unnecessary to determine whether the district court's abuse of discretion was harmless error. TEX. R. APP. P. 44.1(a).

Furthermore, the district court erred in sustaining Cimarex's hearsay objections to Cook's affidavit testimony that he notified Cimarex it could use his road on a temporary basis only. We agree with Cook that such statements were not hearsay but were offered as "operative facts" – proof of the agreement Cook alleges he made with Cimarex. A statement that makes up the parties' alleged offer, acceptance, or terms of contract is deemed to be an operative fact, not hearsay. *Humphrey v. Yancey*, No. 05-15-00653-CV, 2016 Tex. App. LEXIS 7008, at *14 (Tex. App.—Dallas June 30, 2016, pet. denied) (mem. op.); *Thomas C. Cook, Inc. v. Rowhanian*, 774 S.W.2d 679, 685 (Tex. App.—El Paso 1989, writ denied). Evidence of Cook's alleged limitation on his offer for Cimarex to use his roadway therefore does not violate the rule against hearsay. Again, it is unnecessary to determine whether the district court's abuse of discretion was harmless error. TEX. R. APP. P. 44.1(a).

16

**Conclusion**

We sustain Cook's issues as they relate to the district court's grant of Cimarex's motions for summary judgment and its order sustaining the noted evidentiary objections of Cimarex. We reverse the final judgment of the district court and remand the case for further proceedings. TEX. R. APP. P. 43.2(d).

Lawrence M. Doss
Justice